# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SINDRAM,
Plaintiff,

v.

WENDELLA P. FOX,
Defendant.

: CIVIL ACTION
:
: NO. 07-0222

## Memorandum and Order

YOHN, J.                                                February 26 2009

Plaintiff Michael Sindram has filed a Motion for Appropriate and Adequate Relief in connection with his Freedom of Information Act, 42 U.S.C. § 1981, and Age Discrimination Act of 1975 claims. Defendant Wendella P. Fox, the director of the United States Department of Education's Philadelphia Office for Civil Rights ("OCR") has filed a motion to dismiss plaintiff's pro se Amended Complaint for failure to state a cause of action upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons that follow, I will deny plaintiff's motion, grant defendant's motion, and dismiss plaintiff's Amended Complaint.

**I.  Factual and Procedural Background**

The allegations in the Amended Complaint are as follows. At various times, plaintiff was a student at Columbia Union College, Maryland University, and Washington Bible College ("the

1

schools"). While attending the schools, he was discriminated against on the basis of age and disability. Plaintiff filed complaints with the OCR. The OCR found violations of federal law by the schools, but has not taken any enforcement action. Furthermore, plaintiff alleges he was retaliated against by the schools for filing complaints with the OCR, defendant was aware of the retaliation, and defendant again failed to take action. Plaintiff alleges that defendant's failure to take remedial action violated 42 U.S.C. § 1981 and the Age Discrimination Act of 1975, 42 U.S.C. § 6101 *et seq.* ("ADA"). Plaintiff also has made Freedom of Information Act ("FOIA") requests, asking defendant to produce documents related to the OCR's investigation of the schools. Although the Department of Education released some records to plaintiff, defendant has not fully complied with plaintiff's FOIA requests. Plaintiff alleges that defendant's omissions have caused him damage to his reputation and economic harm.

Plaintiff filed his original pro se Complaint on January 22, 2007, making essentially the same factual allegations as his Amended Complaint. On May 4, 2007, defendant filed a motion to dismiss the Complaint. By order of October 30, 2007, I granted defendant's motion, albeit with leave to amend certain claims. *Sindram v. Fox*, No. 07-0222, 2007 WL 3225995, at *7 (E.D. Pa. Oct. 30, 2007). Specifically, I dismissed without prejudice and granted plaintiff leave to amend his federal constitutional claims, his claim under the Federal Tort Claim Act ("FTCA"), and his FOIA claim.

Plaintiff filed his Amended Complaint on November 30, 2007. On December 21, 2007, defendant filed a motion to dismiss plaintiff's Amended Complaint. By order of August 4, 2008, I granted in part and denied in part defendant's motion. *Sindram v. Fox*, No. 07-0222, 2008 WL 2996047, at *6-7 (E.D. Pa. Aug. 4, 2008). I granted defendant's motion to dismiss plaintiff's

2

constitutional claims and FTCA claim and dismissed these claims with prejudice. I denied defendant's motion to dismiss plaintiff's FOIA claim, but ordered plaintiff to produce evidence or a specific description within 30 days of his exhaustion of administrative remedies within the Department of Education. I explicitly informed plaintiff that if he failed to produce such evidence within thirty days, I would grant defendant's motion and dismiss the FOIA claim with prejudice. Finally, because defendant did not brief the issue of whether plaintiff's complaint stated a cognizable claim under § 1981 or the ADA, I denied defendant's motion to dismiss these claims. Therefore, only three of plaintiff's claims remain viable: violation of (1) the FOIA; (2) § 1981; and (3) the ADA.[1]

Plaintiff filed a motion for appropriate and adequate relief on September 9, 2008. On September 30, 2008, defendant filed a response to plaintiff's motion and renewed her motion to dismiss plaintiff's Amended Complaint. Plaintiff responded to defendant's renewed motion to dismiss on October 22, 2008.

**II.     Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom must be viewed in the

---

[1] Despite the fact that I dismissed plaintiff's FTCA claim with prejudice, plaintiff included discussion of this claim in his instant Motion for Appropriate and Adequate Relief. Because I dismissed the claim with prejudice, plaintiff may not reassert it now. To the extent that plaintiff asks me to reconsider my decision to dismiss his FTCA claim, plaintiff's request is both untimely and without merit. *See* Local Rule 7.1(g) (requiring filing and service of a motion to reconsider within ten days after entry of the order).

3

light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and alterations omitted). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted); *see also Phillips*, 515 F.3d at 231-32. There must be a "reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Twombly*, 127 S. Ct. at 1965.

A motion to dismiss under Rule 12(b)(1) challenges the existence of subject matter jurisdiction. Plaintiff bears the burden of proving that the relevant jurisdictional requirements are met. *See Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). "[W]hen there is a factual question about whether a court has jurisdiction, the trial court may examine facts outside the pleadings . . . '[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case.'" *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Plaintiff's factual allegations therefore need not be accepted as true. *See id.* The court is

4

free to consider and weigh evidence outside the pleadings to resolve factual issues bearing on the jurisdictional issue. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

III. **Discussion**

    A.    **FOIA Claim**

In my August 4, 2008 order, I granted plaintiff thirty days to file evidence demonstrating that he exhausted the administrative remedies for his FOIA claim within the Department of Education. Plaintiff responded on September 9, 2008, several days after the thirty day window I allotted him closed. Therefore, plaintiff has violated my August 4, 2008 order, and I will dismiss his FOIA claim with prejudice.

Even if plaintiff's filing were timely, plaintiff has failed to proffer evidence to demonstrate that he exhausted his administrative remedies. Plaintiff attached three exhibits to his instant motion. First, in plaintiff's attached affidavit, plaintiff stated that he appealed the FOIA determination in a letter addressed to the Deputy Chief Office of the Department of Education. Plaintiff also quotes from his alleged FOIA appeal. Plaintiff, however, has not presented the court with a copy of his appeal (as I suggested he do in my August 4, 2008 Memorandum). Thus, the court has no way of confirming whether the quoted language actually is derived from a FOIA appeal. In addition, plaintiff's affidavit fails to address the disposition of the purported FOIA appeal, a failure that severely undercuts plaintiff's assertion that he exhausted his administrative remedies.

Second, plaintiff attached a letter from Deborah Jackson of the OCR, in which Ms. Jackson discussed letters that plaintiff sent to the OCR. Ms. Jackson's letter makes no reference to an appeal of the FOIA determination and therefore lacks value in determining whether plaintiff

actually filed an appeal. Finally, plaintiff attached a letter sent by defendant dated September 11, 2006. As this was sent prior to the FOIA decisions (which occurred on January 19, 2007 and April 10, 2007), defendant's letter is irrelevant to the exhaustion issue. Therefore, because this evidence is insufficient to demonstrate exhaustion, had plaintiff's filing been timely, I still would dismiss his FOIA claim.

B.  **Section 1981 Claim**

Plaintiff argues that defendant's knowledge of the schools' discrimination and subsequent failure to remedy the situation violates 42 U.S.C. § 1981. Defendant argues that § 1981 pertains only to nongovernmental acts and acts taken under the color of *state* law. Consequently, defendant asserts that § 1981 does not apply to defendant who was acting under the color of *federal* law.

Section 1981 provides individuals with extensive rights, *McGovern v. City of Philadelphia*, ---F.3d----, No. 08-1632, 2009 WL 188134, *2 (January 28, 2009), but does not provide a private cause of action for impairment under the color of federal law.[2] *See* § 1981(a),

---

[2] Section 1981 provides:
(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

(c). The § 1981(a) rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law." § 1981(c). By its terms, § 1981(c), added as part of the Civil Rights Act of 1991, limits the reach of § 1981(a). *See* Civil Rights Act of 1991, Pub. L. No. 102-166, tit. 1, § 101, 105 Stat. 1071, 1071-72 (1991). Pursuant to § 1981(c), Congress intended § 1981(a) to cover nongovernmental discrimination and discrimination under the color of state law, but there is no indication that Congress intended to create a federal right against persons acting under the color of federal law, let alone a private cause of action to enforce such a right. Congress chose no to do so in 1991, and no congressional act since 1991 suggests a change in Congress's intent. My conclusion comports with the great weight of cases addressing this issue after the 1991 amendments.[3] In summary, because § 1981(c) limits the reach of § 1981(a), plaintiff does not plead a cognizable § 1981 claim against defendant, who clearly was operating under the color of federal law at the Department of Education. Accordingly, I will

---

> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

[3] *See, e.g., Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005) (holding that § 1981(a) does not apply to actions taken under color of federal law); *Davis-Warren Auctioneers v. FDIC*, 215 F.3d 1159, 1161 (10th Cir. 2000) (joining the Seventh and Eleventh Circuits in holding that § 1981 "is inapplicable to alleged discrimination under color of federal law"); *Davis v. U.S. Dept. of Justice*, 204 F.3d 723, 725 (7th Cir. 2000) (per curiam) (holding that § 1981 did not apply to defendants—federal employees acting under color of federal law—because "by its language § 1981 does not apply to actions taken under color of federal law"); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998) (reasoning that the "language of § 1981 is clear" and holding that § 1981 "does not provide a cause of action for discrimination under color of federal law"); *Garland v. U.S. Airways, Inc.*, No. 05-140, 2007 WL 707355, at *8 (W.D. Pa. March 2, 2007) (finding that since the 1991 amendment to § 1981, "the weight of authority has held that section 1981 does not protect against alleged discrimination under the color of *federal law*" and holding the same (emphasis in original)); *see also U.S. ex rel Moore v. Koelzer*, 457 F.2d 892, 893 (3d Cir. 1972) (finding, prior to 1991 amendments to § 1981, that "cause of action for damages does not accrue under 42 U.S.C. §§ 1981 *et seq.* for an alleged violation of the Act by federal officers acting under color of federal law").

grant defendant's motion and dismiss plaintiff's § 1981 claim with prejudice.

C.  **ADA Claim**

Plaintiff argues that defendant knew the schools had violated the ADA and nonetheless failed to take remedial action. This failure, plaintiff contends, constitutes a violation of the ADA, for which plaintiff seeks both damages and an injunction. Defendant asserts that the ADA contains no express or implied cause of action against an agent of the federal government, and that the ADA's remedial provisions are aimed at recipients of federal funding (i.e., the schools). The issue squarely before the court, therefore, is whether the ADA permits a private cause of action against an employee of the Department of Education. I find that it does not.

The typical transaction covered by the ADA involves three actors: the funding agency (e.g., the Department of Education), the recipient of federal funds ("recipient"), and the protected class of persons who benefit from the anti-discrimination mandate ("beneficiary"). Although necessarily involving federal funding, no provision in the ADA explicitly creates a private cause of action against a federal agency or its employees. The remaining question, which the Third Circuit has not yet answered, is whether the court should imply such a private cause of action. When determining whether to imply a cause of action, "Congressional intent is the 'sole touchstone of [the court's] inquiry.'" *McGovern*, 2009 WL 188134, at *5 (quoting *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 303 (3d Cir. 2007)); *see Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (reasoning that "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy" and that "[s]tatutory intent on [the] latter point is determinative"). To discern Congress's intent, the court can examine "the text and structure of the statute; the existence or non-existence of a

8

comprehensive remedial scheme elsewhere in the same statute; the statute's legislative history; and Congress's explicit creation of private rights in similar statutes enacted during the same time period." *McGovern*, 2009 WL 188134, at *5. None of these factors favors the implication of a private cause of action under the ADA against a federal employee.

I begin my analysis with the text and structure of the ADA. The ADA commands that "no person in the United States shall, on the basis of age, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under, any *program or activity* receiving Federal financial assistance." 42 U.S.C. § 6102 (emphasis added). This language creates federal rights, but it also limits the scope of the ADA, with federal agencies and federal employees resting comfortably outside of its reach. The key is the definition of "program or activity," which is statutorily defined to include state and local governments and instrumentalities, colleges, universities and certain corporations. Federal agencies and federal employees are not included in the definition.[4] *See* § 6107(4). The current definition of "program or activity" was

---

[4] The full definition of "program or activity" is as follows:
    [T]he term "program or activity" means all of the operations of—
(A)(i) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
(ii) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;
(B)(i) a college, university, or other postsecondary institution, or a public system of higher education; or
(ii) a local educational agency (as defined in section 7801 of Title 20), system of vocational education, or other school system;
(C)(i) an entire corporation, partnership, or other private organization, or an entire sole proprietorship—
    (I) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or
    (II) which is principally engaged in the business of providing education,

9

installed by the Civil Rights Restoration Act of 1987 as the common definition for: the ADA; 20 U.S.C. § 1681, *et seq.* ("Title IX"); 42 U.S.C. § 2000d *et seq.* ("Title VI"); and Section 504 of the Restoration Act of 1973, 29 U.S.C. § 794. *See* Civil Rights Restoration Act of 1987, Pub. L. 100-259, § 5, 102 Stat. 28, 30 (1988). As the Second Circuit recently detailed, the Civil Rights Restoration Act was enacted in response to the Supreme Court's interpretation of Title IX in *Grove City College v. Bell*, 465 U.S. 555, 570-75 (1984). *Maloney v. Social Sec. Admin.*, 517 F.3d 70, 75 (2d Cir. 2008) (per curiam). Concerned with the Court's narrow interpretation of the phrase "education program or activity," Congress acted with the purpose of "restor[ing] the broad scope of coverage" of the civil rights statutes.[5] 102 Stat. at 28. Congress, although aiming to *expand* the coverage and scope of the four statutes, chose to exclude federal agencies and employees from the revised definition, strongly suggesting that Congress did not intend the ADA to encompass or create a right against federal actors.

In addition, the existence of a "comprehensive remedial scheme" in § 6103 and § 6104, which does not include a cause of action against a federal agency or its employees, further demonstrates that Congress did not intend to create such a claim. The ADA's enforcement mechanisms include both federal agency oversight (§§ 6103, 6104(a)-(c)) and a private cause of

---

           health care, housing, social services, or parks and recreation; or
(ii) the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship[.]
§ 6107(4).

[5] Specifically, Congress found that "certain aspects of recent decisions and opinions of the Supreme Court have unduly narrowed or cast doubt upon the broad application of title IX of the Education Amendments of 1972, section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and title VI of the Civil Rights Act of 1964." *See* 102 Stat. at 28.

action for injunctive relief against a recipient (§ 6104(e)). Agency regulation and oversight serve as the primary enforcement mechanism, empowering agencies to promulgate regulations "to carry out the provisions of § 6102 . . . . " § 6103(a)(1)(4) (requiring regulations from funding agency "to provide appropriate investigative, conciliation, and enforcement procedures"). The agency can "seek to achieve compliance" with its regulations "by terminating, or refusing to grant or to continue, assistance under the program or activity." § 6104(a)(1). To supplement agency oversight, beneficiaries who believe a recipient is violating § 6102 can file an administrative complaint with the relevant agency. § 6104(f) (exhaustion provision). If, after 180 days, the agency either takes no action or finds in favor of the recipient, the beneficiary can seek to "*enjoin a violation of* [the ADA] by any program or activity receiving Federal financial assistance."[6] § 6104(e)(1) (emphasis added). Notably, the § 6104(e) private cause of action allows a court to enjoin *a violation of* § 6102, not the federal agency's *failure to remedy* such a violation. Further, § 6104(e) injunctions are to be directed against the "program or activity" causing the violation. As detailed above, "program or activity" does not include a federal agency or federal employees. Thus, the private cause of action is restricted with respect to both the *act or omission* and the *types of actors* that may be enjoined. The text of § 6104(e), therefore,

---

[6] Section 6104(e)(1) provides:
When any interested person brings an action in any United States district court for the district in which the defendant is found or transacts business to enjoin a violation of this Act by any program or activity receiving Federal financial assistance, such interested person shall give notice by registered mail not less than 30 days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed. Such interested person may elect, by a demand for such relief in his complaint, to recover reasonable attorney's fees, in which case the court shall award the costs of suit, including a reasonable attorney's fee, to the prevailing plaintiff.

acknowledges *a* cause of action, but not one allowing a beneficiary to seek a court order that directs a federal agency to enforce § 6102 (i.e., an order requiring an agency to terminate, refuse, or reduce federal assistance).[7,8]

Unquestionably, Congress crafted a clear and comprehensive remedial scheme to enforce the rights created by the ADA. That Congress chose this remedial scheme in favor of another is not a matter for the courts, but rather one for the legislature. "Indeed, federal courts often view the availability of other enforcement mechanisms in a statutory scheme as preclusive of an implied cause of action." *McGovern*, 2009 WL 188134, at *4.

For these reasons, I find that the ADA does not provide a private cause of action against defendant.[9] Thus, plaintiff has not pleaded a cognizable cause of action under the ADA. I will

---

[7] A plaintiff-beneficiary who disagrees with a funding agency's treatment of the administrative complaint is not left without a remedy. Congress merely chose to direct the remedy at recipients, not federal agencies.

[8] The private cause of action was added in 1978 as part of the amendments to the Comprehensive Older Americans Act. Congress clearly intended to allow *a* private cause of action, stating that the ADA was amended "to permit persons harmed by violations of the Act to pursue a private civil suit for relief." H.R. Rep. No. 95-1150, at 23 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 3388, 3410. This "private suit for relief," however, was (as discussed above), limited. Congress only amended the ADA to "provide that any interested person may bring an action in an appropriate district court of the United States *to enjoin any violation* of such Act by any program or activity receiving federal financial assistance." *Id.* at 40. Had Congress intended to create a broader private cause of action, Congress could have done so.

[9] This conclusion accords with the Third Circuit's treatment of Title VI. *See NAACP v. Med. Ctr., Inc.*, 599 F.2d 1247, 1254 n.27 (3d Cir. 1979). The language and structure of Title VI is functionally the same as the ADA, forbidding discrimination by a federally funded "program or activity" on the basis of race rather than age. *Compare* § 6102, *supra* page 8 (reciting statutory language), *with* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). In *NAACP*, the Third Circuit held that under Title IX, a "*beneficiary may not sue* the administrative agency . . . . If the beneficiary were allowed to do so, it would be able to

grant defendant's motion and dismiss plaintiff's ADA claim with prejudice.

## IV. Conclusion

Because plaintiff failed to timely comply with my order of August 4, 2008 and because plaintiff's attempts to comply nonetheless fail on the merits, plaintiff's FOIA claim will be dismissed with prejudice. Moreover, neither § 1981 nor the ADA recognize a private cause of action against defendant. Thus, I will dismiss these claims with prejudice. Accordingly, all of the remaining claims in plaintiff's Amended Complaint will be dismissed with prejudice and without leave to amend.

An appropriate order follows.

---

circumvent the limitations of sections 602 and 603 [administrative oversight and judicial review], and would be in a position to, in essence, compel funding termination—*which is an impermissible result.*" *Id.* (emphasis added). As with Title VI in *NAACP*, allowing a beneficiary to sue the federal funding agency or its employees under the ADA would circumvent the remedial mechanisms created by Congress in §§ 6103 and 6104. This conclusion "does no harm to [the plaintiff's] rights, as complete relief can be awarded without the agency being a party to the private suit, and complete discovery can be undertaken, since the agency has no more relevant information to impart than does the funding recipient, who [would be] a party." *Id.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SINDRAM,
Plaintiff,

v.

WENDELLA P. FOX,
Defendant.

CIVIL ACTION

NO. 07-0222

## Order

AND NOW this 26 day of February 2009, upon consideration of plaintiff's motion for appropriate and adequate relief (Doc. No. 32), defendant's response thereto, defendant's motion to dismiss (Doc. No. 37), and plaintiff's response thereto, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for appropriate and adequate relief (Doc. No. 32) is **DENIED**.

2. Defendants motion to dismiss (Doc. No. 37) is **GRANTED**. Plaintiff's Amended Complaint (Doc. No. 16) is **DISMISSED** with prejudice.

William H. Yohn Jr., Judge